## M. A. TUCKER v. STATE.

No. A-6708.   Opinion Filed Dec. 4, 1928.
(272 Pac. 483.)

Stevens & Cline, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DOYLE, P. J.   Under an information charging that

M. A. Tucker did willfully, unlawfully, and feloniously, with intent to do bodily harm, commit an assault upon J. W. Ward, by striking and beating said J. W. Ward with dangerous weapons, to wit, a hammer and a heavy board, the jury found the defendant guilty of simple assault and fixed his punishment at a fine of $35. Motion for a new trial was duly filed and overruled. From the judgment rendered on the verdict he appeals.

The main, if not the only, question presented, is whether the evidence was sufficient to sustain the verdict. It appears that the prosecuting witness Ward was a tenant of the defendant in a house on Avenue A, Lawton, and there was a dispute over the rent for the last month Ward occupied the house. Ward testified:

"I went over and said, 'Tucker, you are using my lumber.' He said something, and raised up and hit me with the hammer, and that is the last that I remember." That he gave Tucker a check for $27.50 for the last month's rent, and two days later Tucker came back with the check and said the bank would not take it, and handed back the check, and he paid it in cash. That Tucker claimed a balance of $2.50 rent for the month and they had a dispute about it.

On cross-examination he was asked:

"Did you that time say to Tucker: 'You quit bothering me about that, or I will give you a damn good licking?' " He answered: "I might have said it; I don't think I did."

"Q. What did you do, Mr. Ward, to provoke him to strike you with that hammer? A. I never done anything, only told him that he was using my lumber, and he said he would pay for it.

"Q. Did you say out there, 'I will go and get my gun?' A. I don't know.

"Q. As a matter of fact, you went over there with a fight in mind? A. I might have."

The second witness for the state, Mrs. M. L. Denny,

testified that she lived next door to the Tucker place, and that morning was sitting on the porch sewing; that, hearing a scuffle she looked over and saw Ward and Tucker running around at one another, and it looked that, if they would get together, they would fight; that Mr. Ward then went out as far as the parking and said, "I will get my gun," and Mr. Tucker said, "I will get mine." Then Mrs. Ward and her mother came across the street to where Mr. Tucker was, and witness went into the house to call the police, then came out, and saw Mr. Tucker hit Ward with a board.

Mrs. J. W. Ward testified:

"My husband went over there; Tucker was bent over and raised up with a hammer in his hands. I didn't see him hit my husband with the hammer, but I ran over there and my husband went around me and Tucker picked up this board, drew back, and said, 'Don't you come over here; this is my premises.' My husband came out from behind me and Tucker hit him with a board and he fell."

As a witness in his own behalf M. A. Tucker testified that he took a check in part payment of the rent and went to the State National Bank; they said there was no money there, that it could not be paid. Later he took the check to Ward, and Ward took the check and gave him the money. Then he asked Ward for the balance of the month's rent, $2.50, and Ward put his finger in his face and said, "If you don't stop this I am going to give you a licking," and he told Ward the best thing to do was to pay him the $2.50; they were walking along, and Ward pulled his knife out and said, "I don't want you to follow me, you are getting the last cent out of me you will ever get."

That morning he was repairing the porch and did not notice Ward until he said: "Tucker, you know you are using my lumber;" that he looked up and said, "Blonde, if I am using your lumber I will pay for it,"

and as he started to get up Ward hit him twice; then they scuffled around and Ward said, "I will get my gun," then swung in behind Mrs. Ward who was standing there; that he could not see what she gave him, and he grabbed a ceiling board about 40 inches long and said to them, "Stop! stop! get off of my premises;" then, as Ward swung around from behind his wife, he hit him a pretty good lick; that he thought Ward was going to shoot him and struck him in self-defense; that his ear was sore a long time, the side of his head was cut, and he had marks on his shoulder and arms where Ward hit him; that he went to Dr. Hughes the next morning.

Dr. Hughes testified that he examined the defendant, and found his right ear demuted at the base, and he had an injury on his shoulder and on the forearm and on the left hand.

The foregoing is the substance of the material testimony upon which the conviction is based.

Penal statutes should be liberally construed in favor of the accused, and it must appear that he committed acts which are clearly made an offense by statute. Our Penal Code provides:

"To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:

"First. * * *

"Second. * * *

"Third. When committed either by the party about to be injured, or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person, or any trespass or other unlawful interference with real or personal property in his lawful possession; provided the force or violence used is not more than sufficient to prevent such offense."

Section 1762, C. S. 1921.

The testimony of the witnesses for the state, excepting that of the prosecuting witness, supports or tends to support the testimony of the defendant that he acted in his necessary self-defense. He was at a place where he had a right to be, and the prosecuting witness was a trespasser, and the testimony for the state fails to show that, in defending himself in attempting to prevent the trespass, the defendant did not use more force or violence than was reasonably necessary to effect that purpose. Dickinson v. State, 3 Okla. Cr. 151, 104 P. 923; Buchanan v. State, 25 Okla. Cr. 198, 219 P. 420.

Our Procedure Criminal provides:

"If, at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant." Section 2713, C. S. 1921.

Carefully considering the whole testimony in the case, we are convinced that the court should have advised the jury to acquit the defendant when the state rested, because as a matter of law the evidence was insufficient to sustain a conviction.

Because the evidence is insufficient to warrant a conviction, or to sustain the verdict, the judgment is reversed.

EDWARDS and DAVENPORT, JJ., concur.